**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT LONDON**

**CIVIL ACTION NO. 22-181-DLB**

**THOMAS SHARP**                                                                             **PLAINTIFF**

**v.**                                 **MEMORANDUM OPINION & ORDER**

**KILOLO KIJAKAZI, Acting Commissioner**
**Of Social Security**                                                        **DEFENDANT**

\* \*  \* \*  \* \*  \* \*  \* \*  \* \*  \* \*

Plaintiff Thomas Sharp brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying Sharp's eligibility for Social Security disability insurance benefits. (Doc. # 2). The Court, having reviewed the record and the parties' dispositive motions, will **deny** Plaintiff's Motion for Summary Judgment (Doc. # 12), **grant** Defendant's Motion for Summary Judgment (Doc. # 15), and **affirm** the Commissioner's decision.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Sharp applied for Supplemental Security Income ("SSI") on March 22, 2018. (Tr. 297-303). At the time of filing, Sharp was 52 years old. (Tr. at 297). He alleged that his disability began on June 15, 2010. (*Id*.) In his application he alleged disability due to physical and mental conditions that included degenerative disc disease, a herniated disc, chronic pancreatitis, arthritis in his back and legs, high cholesterol, thyroid issues, anxiety, and seizures. (Tr. at 324). He stopped working on June 1, 2008 because of these conditions. (Tr. at 325).

1

Sharp's claim was initially denied. (Tr. 157-160). He filed a Request for Reconsideration (Tr. 161-163), and a Request for a Hearing by an Administrative Law Judge ("ALJ"). (Tr. 173-174). He had a hearing before an ALJ on December 13, 2019. (Tr. 68-96). On December 31, 2019, the ALJ issued a decision finding Sharp not disabled. (Tr. 130-141). On October 1, 2020, the Appeals Council remanded Sharp's case back to an ALJ. (Tr. 149). Sharp had another hearing in front of an ALJ on May 12, 2021. (Tr. 37-59). The ALJ issued a second decision on July 8, 2021. (Tr. 15-29). This decision became the final decision of the Commissioner on July 29, 2022, when the Appeals Council denied Sharp's request to review the decision. (Tr. 1). On September 27, 2022, Sharp filed the instant action. (Doc. # 2). Sharp and the Commissioner of Social Security filed Cross-Motions for Summary Judgment, which are now ripe for review. (Docs. # 12, 15).

## II.   DISCUSSION

### A.   Standard of Review

Sharp seeks judicial review of the Commissioner's decision under 42 U.S.C. § 405(g). The Court's review is "limited to determining whether the Secretary's findings are supported by substantial evidence and whether the Secretary employed the proper legal standards." *Cutlip v. Sec'y of Health & Hum. Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). This is "more than a scintilla of evidence" but less than a preponderance of evidence*. Cutlip*, 25 F.3d at 286.

To determine whether substantial evidence was considered the Court must examine the administrative record as a whole. *Id.* (citations omitted). If this Court finds the ALJ's decision is supported by substantial evidence, it must affirm the decision even if it would decide the case differently or if the evidence supports the opposite conclusion. *Id.*

**B. Analysis**

Sharp raises four arguments on appeal. (Doc. # 12). First, he argues that the ALJ failed to adequately consider whether his impairments meet or equal the criteria of a listed impairment under 20 C.F.R Part 404, Subpart P, Appendix 1. Second, he argues that the ALJ improperly evaluated the opinion evidence of three evaluators in the record. Third, he argues that the ALJ improperly evaluated Sharp's subjective complaints of his symptoms. Finally, he argues that the ALJ improperly substituted her own medical judgment. All four claims fail. The Court will discuss each in turn.

*1. **The ALJ Adequately Considered Sharp's Impairments***

Sharp argues that the ALJ did not adequately consider his impairments when she concluded that he was not disabled. The ALJ conducts a five-step analysis to determine if a plaintiff is disabled. *See* 20 C.F.R. § 404.1520(a)(4). In this evaluation, the ALJ considers all evidence in the plaintiff's case record. *Id.* at (3). At Step 1, the ALJ considers whether the claimant is doing substantial gainful activity. *Id.* at (4)(i). At Step 2, the ALJ considers the medical severity of the claimant's disability. *Id.* at (4)(ii). At Step 3, the ALJ again considers the medical severity of the claimant's disability, this time considering whether the impairments meet or equal one listed in Appendix 1 of Subpart P. *Id.* at (4)(iii). At Step 4, the ALJ will consider the claimant's residual functional capacity and

3

past relevant work. *Id.* at (4)(iv). Finally, at Step 5, the ALJ will consider whether the claimant can make adjustments to other work considering his or her residual functional capacity, age, education, and work experience. *Id.* at (4)(v). If at any step the ALJ determines that the claimant is not disabled, the analysis ends there. *Richardson v. Saul*, 511 F. Supp. 3d 791, 797 (E.D. Ky. 2021) (citing § 404.1520(a)(4)).

Sharp argues that the ALJ erred at Step 3 when it determined Sharp does not have an impairment or combination of impairments that meets the requisite severity. (Doc. # 12 at 4). If the claimant's impairments meet the duration requirements and are listed in Appendix 1, then the ALJ will find the claimant disabled without considering his or her age, education, and work experience. *Id*. at (5)(d). Sharp must satisfy all criteria of each listing to meet it. *See Rabbers v. Comm'r Soc. Sec. Admin*., 582 F.3d 647, 653 (6th Cir. 2009).

Sharp argues that the ALJ did not consider the appropriate listings. The ALJ is responsible for deciding medical equivalency when determining which listing to consider. § 404.1526(e)(3). However, the ALJ does not need to go through each listing. *Sheeks v. Comm'r of Soc. Sec. Admin.,* 544 F. App'x 639, 641 (6th Cir. 2013). The ALJ should discuss a listing if "the record 'raise[s] a substantial question as to whether [the claimant] could qualify as disabled' under a listing." *Id.* (quoting *Abbott v. Sullivan,* 905 F.2d 918, 925 (6th Cir.1990)). To argue that the ALJ must have considered a certain listing that it did not, Sharp must show that there is a "substantial question" as to whether he meets the requirements of that listing. *See Sheeks v. Comm'r of Soc. Sec. Admin*., 544 F. App'x 639, 641–42 (6th Cir. 2013). This requires more than just showing that there is an open question as to whether he meets a listing. *Id.*

4

The ALJ determined that the severity of Sharp's physical impairment "does not meet or medically equal the criteria of any listing level impairment." (Tr. at 18). Sharp argues that his impairments meet Listings 12.02 (neurocognitive disorders), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (Doc. # 12 at 5). The ALJ considered listings 12.05 (intellectual disorder) and 12.06 (anxiety and obsessive-compulsive disorders). (Tr. at 19). However, the evidence considered by the ALJ in its analysis of 12.05 and 12.06 was sufficient to support a finding that Sharp did not meet the listings in 12.02, 12.04, or 12.06 because she would have considered similar criteria. 20 C.F.R Pt. 404, Subpart P, App. 1, 12.02, 12.04, 12.06.

The ALJ considered sufficient evidence when considering 12.06. As noted by the Commissioner (Doc. # 15 at 6), the paragraph B criteria for section 12.06 is the same as 12.02 and 12.04. 20 C.F.R Pt. 404, Subpart P, App. 1, 12.02(B), 12.04(B), 12.06(B). Under each listing, the claimant must meet the requirements of either Part A and B or A and C. *See id*. Paragraph B requires the ALJ to consider whether the claimant has an "[e]xtreme limitation of one, or marked limitation of two, of the following areas of mental functioning": ability to Understand, remember, or apply information, interact with others, concentrate, persist, or maintain pace, or adapt or manage oneself. *Id*. The ALJ found that none of these were met.

The Court finds that the ALJ considered substantial evidence in making this determination. First, the ALJ found that Sharp has a "mild limitation" as to his ability to understand, remember, or apply information. (Tr. at 19). In making this determination, the ALJ considered substantial evidence in the record, including Sharp's education level, his ability to follow a three-step command, his basic arithmetic ability, and his results from

5

the Wechsler Adult Intelligence Scale and Rey 15 Item Memory Test.  (Tr. at 19).  The psychological consultive examiner of these tests opined that Sharp's "ability to understand, remember, and carry out instructions towards the performance of simple repetitive tasks was adequate."  (Tr. at 19).  Sharp argues that the ALJ should have considered the totality of Reba Moore's opinions, and that it erred when it considered only her first report.  (Doc. #12 at 5-6).  However, the ALJ explained that it did not consider her subsequent report because it found it unpersuasive.  (Tr. at 26).  In her 2018 report, Ms. Moore opined that Sharp's "ability to understand, remember, and carry out instructions . . . appears to be adequate."  (Tr. at 868).  Ms. Moore additionally opined that Sharp's ability to sustain attention and concentrate on simple tasks, ability to interact with coworkers, and ability to tolerate stress of day-to-day employment "moderately impaired" by his anxiety.  (*Id.*).  The ALJ found Ms. Moore's 2020 report to be inconsistent with these initial objective findings and therefore unpersuasive.  (Tr. at 26).

      The ALJ found Sharp only had a "moderate limitation" in interacting with others.  In making this finding the ALJ considered Ms. Moore's 2018 report that stated Sharp has a friend he talks to occasionally and he was cooperative and had good eye contact, though his mood was irritable and anxious.  (Tr. 19, 865, 868).  The ALJ also referred to Ms. Moore's opinion that Sharp's ability to interact with coworkers was moderately limited.  (Tr. 19).

      The ALJ found Sharp had "moderate limitation" in concentrating, persisting, or maintaining peace.  In support of this determination the ALJ again considered Moore's 2018 report which stated that Sharp was "very fidgety" and "squirmed in his chair and was obviously anxious."  (Tr. at 866).  The ALJ also considered that Ms. Moore noted Sharp

6

was able to perform some attention and concentration tasks and follow a simple three step command in addition to simple addition and subtraction problems. (Tr. at 866-867). Based on these findings M.s Moore opined that Sharp's ability to sustain attention and concentration towards simple tasks is "moderately impaired." (Tr. at 868).

Finally, the ALJ found Sharp had a "mild limitation" as to adapting or managing oneself. (Tr. at 20). In making this determination, the ALJ considered Ms. Moore's findings that Sharp presented with good hygiene and denied any suicidal ideation. (Tr. at 865-66). The ALJ also noted that the record indicates he independently performs activities of daily living. (Tr. at 20, 23) (citing Tr. at 763, 768). Based on the above, the Court finds that the ALJ considered substantial evidence in its analysis of Paragraph B of 12.06.

The Court also finds the ALJ considered substantial evidence in its analysis of Paragraph C. Paragraph C of each 12.02, 12.04, and 12.06 require that the mental disorder be "serious and persistent" as shown through medically documented history of the existence of the disorder for at least two years. 20 C.F.R Pt. 404, Subpart P, App. 1, 12.02(C), 12.04(C), 12.06(C). Sharp points to no medically documented history of the disorders in the record. The ALJ's determination as to 12.06 can be applied to both 12.02 and 12.04 because they consider the same factors under both B and C. As such, the Court finds that the ALJ considered sufficient evidence for these impairments.

### 2. *The ALJ Properly Evaluated Opinion Evidence*

Sharp argues that the ALJ failed to properly evaluate the opinion evidence in the record in accordance with 20 C.F.R. § 404.1520c. The Court disagrees. Under § 404.1520c, the most important factors for the ALJ to consider in determining

7

persuasiveness of medical opinions are supportability and consistency. The ALJ may, but is not required to, explain the remaining factors. *Id.* at (b)(2). Supportability refers to how relevant the objective medical evidence is to support the medical opinions presented. *Id.* at (c)(1). Consistency refers to how consistent a medical opinion is with the evidence from other medical sources and nonmedical sources. *Id.* at (c)(2). The ALJ is "not required to articulate how [it] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.* at (b)(1). However, the ALJ must articulate in its decision how persuasive he or she finds the medical opinions based on these factors. *Id.*

First, Sharp argues that the ALJ incorrectly found the opinion of Ms. Day unpersuasive. (Doc # 12 at 9). Sharp argues that it was improper for the ALJ to discount Ms. Day's use of a check box form. However, a close reading of the ALJ's decision shows that its finding was based not on the forms themselves, but on the fact that the information on the forms was inconsistent with the objective medical findings in the record. (Tr. at 27). For example, the ALJ compared Ms. Day's notation of Sharp's "extreme limitations," including a seizure disorder she identified, with the objective medical findings from others in the record, including a neurologist, who prescribed him mental health medications. (Tr. at 27). An ALJ will consider the findings of a neurologist to be more persuasive than that of a family doctor when it comes to issues within their expertise. § 416.920c(c)(4).

Second, Sharp argues that the ALJ incorrectly found the opinion of Ms. Johnson unpersuasive. (Doc. # 12 at 10-11). However, the ALJ explained that she found the opinion of Ms. Johnson to be the least persuasive because of the contradictions within her report. (Tr. at 27). Third, Sharp argues that the ALJ incorrectly found the opinion of

8

Ms. Moore unpersuasive.  (Doc. # 12 at 12).  The ALJ found the first opinion of Ms. Moore persuasive but did not rely on the findings in her second report because of its inconsistency with the first report and other evidence in the record.  (Tr. at 26).  Given the ALJ's explanations regarding supportability and consistency for each medical report relied on, the Court finds that the ALJ properly reviewed this evidence.

### 3. *The ALJ Properly Evaluated Sharp's Subjective Complaints*

Sharp argues that the ALJ improperly discounted his subjective complaints as being inconsistent with the objective medical findings.  (Doc. # 12 at 12).  The ALJ must consider all symptoms complained of by the claimant, including pain, and the extent to which the symptoms "can reasonably be accepted as consistent with the objective medical evidence and other evidence."  § 416.929(a).  However, the ALJ does not consider these symptoms alone—rather, they are considered against the objective medical evidence in the record.  *See id.*

The ALJ properly considered Sharp's statements regarding his symptoms against the objective medical evidence in the record, and Sharp's own prior statements to medical professionals.  (Tr. at 23).  For example, the ALJ considered that Sharp had told his neurologist that he was having one seizure per week yet reported daily seizures to the SSA.  (Tr. at 24).  The ALJ also pointed to discrepancies between the symptoms complained of by Sharp and the treatment he was receiving.  (Tr. at 23).  Additionally, Sharp's physical consultative examination did not reveal major injuries or issues.  (Tr. at 23).  After he was diagnosed with influenza in 2020, his physical exams showed no major issues.  (Tr. at 24).  Another physical exam in 2021 again showed no major issues, and Sharp himself admitted at the time that his anxiety was under control due to his

9

medication. (Tr. at 25) (citing Tr. at 1001). Thus, the Court finds the ALJ considered "substantial, legitimate evidence to support [her] factual conclusions" regarding Sharp's complaints. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

### 4.   *The ALJ Did Not Substitute Her Own Medical Judgment*

Sharp argues that the ALJ improperly substituted her own medical judgment for that of the medical experts. (Doc. # 12 at 13). The Court disagrees. The two examples provided by Sharp are statements based on the consultative examinations within the record. The first example provided by Sharp is an excerpt from the ALJ decision stating "[Plaintiff] made complaints of an alleged seizure disorder, but what he actually described was more of a panic attack." (Doc. # 12 at 13) (citing Tr. 23). This statement is based on a report describing Sharp's explanation of his seizures where he said he "starts to feel anxious like he is going to have a panic attack." (Tr. at 859). The second example provided by Sharp is the ALJ's statement that "it is unlikely that the claimant even has a seizure disorder." (Doc. # 12 at 13) (citing Tr. 27). This is better characterized as an inference based on all the relevant objective medical evidence rather than a medical opinion. But even if these two examples could be considered medical opinions in any capacity, the Court finds that they are harmless error, because they would not change the outcome of the decision. *See Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009).

### III.   CONCLUSION

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1)   The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2)    Plaintiff's Motion for Summary Judgment (Doc. # 12) is hereby **DENIED**;

(3)    Defendant's Motion for Summary Judgment (Doc. # 15) is hereby **GRANTED**;

(4)    This civil action is hereby **DISMISSED** and **STRICKEN** from the Court's active docket; and

(5)    A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 18th day September, 2023.

Signed By:
*David L. Bunning*
**United States District Judge**